**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

SHANE A. KITTERMAN,          )
#B-80577,                    )
                             )          18-114-NJR
         Plaintiff,          )
                             )
     vs.                     )          **Case No. 17-cv-00290-SMY**
                             )
JEFF DENNISON,               )
JASON GARNETT,               )
JOHANNE HOSCH,               )
GLOBAL TEL-LINK CORP,        )
CHRISTOPHER BRINKLEY,        )
JOHN BALDWIN,                )
CIARA HALL,                  )
OFFICER DUNNE,               )
OFFICER SAMMS,               )
OFFICER EDWARDS and          )
YOLLANDA HARRINGTON,         )
                             )
         Defendants.         )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is now before the Court for consideration of the most recent version of Plaintiff Shane Kitterman's First Amended Complaint. (Doc. 22). Plaintiff is currently incarcerated at Shawnee Correctional Center ("Shawnee"). On March 20, 2017, he originally brought this action for miscellaneous deprivations of his constitutional rights at Big Muddy River Correctional Center ("Big Muddy") and Shawnee Correctional Center ("Shawnee") pursuant to "42 U.S.C. §§ 1331(1) and 1343." (Doc. 1). The original Complaint took a largely scattershot approach. *Id.* It focused, if at all, on claims of retaliation by officials at Big Muddy and Shawnee that resulted from Plaintiff's decision to challenge Big Muddy's video visitation program. (Doc. 1, pp. 1-5).

The Complaint did not survive preliminary review, and the Court dismissed it without prejudice on May 22, 2017. (Doc. 8). Plaintiff was granted leave to file a First Amended Complaint on or before June 19, 2017. *Id.* He was specifically instructed to focus his First Amended Complaint on related claims against the same group(s) of defendants and warned that "**[c]laims found to be unrelated will be further severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.**" (Doc. 8, p. 14) (emphasis in original).

During the next three months, Plaintiff filed a steady stream of amended complaints (Docs. 11, 12 and 22) and supplements (Docs. 16, 17 and 19).[1] Plaintiff interspersed these amendments and supplements with numerous motions seeking injunctive relief (Docs. 13 and 20), which the Court immediately took up and addressed. (Docs. 15 and 21). At the same time, the Court repeatedly ordered Plaintiff to select a single First Amended Complaint for use in this action. (Doc. 14, 18 and 25). The final deadline for making this decision was August 29, 2017. (Doc. 25). Just before the deadline expired, Plaintiff filed the First Amended Complaint that is identified as Document 22 in CM/ECF. In an Order dated October 5, 2017, the Court accepted Document 22 as the operative First Amended Complaint in this matter. (Doc. 28).

The First Amended Complaint at Document 22 supersedes and replaces all prior versions of the Complaint, rendering all other versions **VOID**. *See Flannery v. Recording Indus. Ass'n of*

---

[1] The Court did not receive any of the proposed amendments or supplements prior to the court-imposed deadline for filing a First Amended Complaint, *i.e.*, on or before June 19, 2017. The "Amended Complaint" was filed on June 23, 2017. (Doc. 11). However, it is timely under the prison mailbox rule. *See Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015) ("[A] pro se prisoner's legal documents are considered filed on the date that they're tendered to prison staff in accordance with reasonable prison policies, regardless of whether they are ultimately mailed or uploaded."). Plaintiff signed the "Amended Complaint" on June 15, 2017 and included a statement confirming that it was "placed in [the] institutional mail on June 18, 2017." (Doc. 11, p. 31). The Court then granted Plaintiff leave to replace Document 11 with a different First Amended Complaint, which he filed at Document 22.

*Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint (Doc. 22) is now subject to screening pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). As part of this Screening Order, the Court will also consider whether any claims in the First Amended Complaint are improperly joined in this action and are subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## First Amended Complaint (Doc. 22)

In the First Amended Complaint, Plaintiff has again taken a scattershot approach to his claims against the defendants by filing what amounts to an omnibus complaint. He names officials at two different prisons in connection with numerous unrelated claims. The Court has done its best to organize and summarize the allegations against the defendants herein. In the

process, it has become clear that many claims and defendants are improperly joined in this action and are subject to severance or dismissal. Against this backdrop, the Court summarizes the allegations against officials at each institution below.

## A. Big Muddy

Plaintiff entered Big Muddy on January 19, 2016. (Doc. 22, p. 6). At the time, the Illinois Department of Corrections ("IDOC") was allegedly under contract with Global Tel-Link Corp ("GTL") to provide inmates with video visitation. *Id*. Warden Garnett and Assistant Warden Harrington distributed flyers to inmates at Big Middy explaining that the IDOC "partnered with 'Global Tel-Link Corp' ('GTL') to provide 'New Media Services' to offenders." (Doc. 22, p. 7). Inmates who were interested in utilizing these services to visit with friends and family were first required to provide a "certain sum of money" in exchange for a new electronic device that was capable of remote video visitation. (Doc. 22, p. 6). Inmates were required to wait up to four weeks from the date of purchase for delivery of the device. (Doc. 22, p. 7).

Plaintiff placed an order for the device with an unknown employee in the prison's commissary on March 16, 2016. (Doc. 22, pp. 7-8). The employee was supervised by Warden Garnett and Assistant Warden Harrington. *Id*. At the time, Plaintiff was given no instructions for canceling the transaction. *Id*. He also received no information about warranties on the device. (Doc. 22, p. 7). Plaintiff's trust fund account reflected a deduction of $74.99 for an MP3 player and $32.00 for "credits to purchase music." (Doc. 22, p. 8).

Plaintiff retrieved the MP3 player from the prison's commissary thirty-two days after the transaction was processed. (Doc. 22, p. 8). He and several hundred other inmate consumers soon discovered what Plaintiff characterized as "an act of theft by deception" on the part of GTL and the IDOC. *Id*. The media devices were not new. *Id*. They were "used, defective, and

unmerchantable." (Doc. 22, pp. 8-9). When Plaintiff tried to return his MP3 player and cancel the original transaction, an IDOC employee refused to cancel the transaction or issue him a refund because the seven-day return period had expired. (Doc. 22, p. 9). Plaintiff later learned that he had only seven days from the date of purchase to recover damages to or resulting from the device. (Doc. 22, p. 8).

Plaintiff immediately filed grievances and complaints with Warden Garnett and Assistant Warden Harrington, but they refused to take any action to assist him. (Doc. 22, p. 9). He wrote letters to IDOC Director John Baldwin, but his letters went unanswered. *Id*. Plaintiff then assisted other inmates in filing grievances, letters and lawsuits against IDOC Director Baldwin, Warden Garnett, Assistant Warden Harrington, GTL, "commissary" and "personal property." (Doc. 22, p. 10).

Plaintiff soon became the target of Ciara Hall, an IDOC employee who was also a GTL liaison. (Doc. 22, p. 10). When Plaintiff refused to surrender his device to Hall without first receiving assurance from her that he would receive a full refund, Hall allegedly told Plaintiff to address the issue with GTL and then "fabricated allegations against the plaintiff." (Doc. 22, p. 11). Although Plaintiff alleges that the prison offered a "kiosk" for direct communications between inmates and GTL, he describes no efforts on his part to address the matter with GTL. *Id*. He also fails to provide any examples of Hall's "fabricated allegations" or retaliation against him. *Id*.

At the time, Plaintiff was employed as a law clerk at Big Muddy's law library, and was also enrolled in vocational classes, substance abuse classes and parenting skills classes at the prison. (Doc. 22, p. 11). While working as a law clerk, Plaintiff assisted his fellow inmates in preparing and filing grievances and lawsuits to challenge Big Muddy's video visitation program.

(Doc. 22, p. 12). At some point, Warden Garnett, Assistant Warden Harrington, Hall and GTL placed Plaintiff in segregation for "several days" in retaliation for filing these grievances and complaints. (Doc. 22, p. 15).

While working at the law library in September 2016, Plaintiff observed Johanne Hosch, his work supervisor, engage in sexual misconduct with an inmate. (Doc. 22, p. 12). Plaintiff indicates that this was one of three reported incidents. *Id*. He reported his observations in a grievance filed pursuant to the Prison Rape Elimination Act. *Id*. Although Christopher Brinkley was assigned to investigate Plaintiff's report of sexual misconduct, Hosch "self-processed" the grievance. (Doc. 22, p. 13). After she became aware that Plaintiff reported her for misconduct, Hosch removed Plaintiff from his job, his educational classes and his rehabilitative programs. (Doc. 22, pp. 13, 23).

Officers Pfeimeister and Lasiter began to threaten Plaintiff. (Doc. 22, p. 13). Although he reported these unspecified threats to Warden Garnett, Assistant Warden Harrington and Brinkley, they ignored Plaintiff's reports. *Id*. At some point, Officer Lasiter and possibly Officer Pfeimeister "assaulted" Plaintiff while he walked to the chow hall. (Doc. 22, p. 16). Plaintiff offers no information about the assault, other than to allege that it happened. *Id*. He adds that the officers assaulted him "at the behest of Hosch in retaliation for revealing her sexual misconduct." (Doc. 22, p. 14).

Plaintiff filed grievances to complain about the "assault." (Doc. 22, p. 14). All of Plaintiff's grievances were "confiscated" by Brinkley. *Id*. When Brinkley confirmed that Plaintiff's report of sexual misconduct against Hosch was true, Brinkley also retaliated against Plaintiff. *Id*. Hosch warned Plaintiff to stop making "all" reports of sexual misconduct by IDOC employees and threatened "severe punishment" for further reports. (Doc. 22, pp. 14-15).

Plaintiff ignored these threats and continued filing grievances. (Doc. 22, p. 15). He also submitted a request for a transfer to a prison "similar in distance [to] his family and with similar programs." (Doc. 22, p. 14). His request was denied after the IDOC determined that he was "properly placed." *Id*. However, Warden Garnett and Assistant Warden Harrington decided to transfer Plaintiff after GTL informed both wardens on January 10, 2017 about a pending suit Plaintiff filed against them in Jefferson County, Illinois. (Doc. 22, p. 16). The wardens ordered a disciplinary transfer, and Plaintiff was sent to Shawnee. *Id*.

### B.    Shawnee

Upon Plaintiff's arrival at the new facility, Warden Dennison was "verbally alerted" by "defendants (sic) agents" that Plaintiff was as a "grievance writer." (Doc. 22, p. 17). In response, Warden Dennison instructed an officer to strip search Plaintiff. *Id*. During the search, the officer used his security wand to hit Plaintiff in his stomach. *Id*. When Plaintiff screamed out in pain, Warden Dennison warned him that he would "be sorry" if he "continue[d] to write grievances." *Id*. Plaintiff allegedly became "overwhelmed by mental anguish and sick with depression." *Id*. He sought mental health treatment in the prison's mental health unit. *Id*.

Between April and July 2017, after filing this lawsuit, Plaintiff allegedly became the target of assault by corrections officers at Shawnee. (Doc. 22, p. 18). He describes one of these assaults by Officer Dunne. Sometime during this time period, the officer ordered Plaintiff to remove his clothing during a routine strip search conducted pursuant to "normal practices" while preparing for a scheduled visit. *Id*. While searching Plaintiff, Officer Dunne allegedly fondled his genitals. *Id*. Plaintiff was afraid for his safety. *Id*. He remained quiet until he felt safe enough to report the incident to a mental health care provider, who prepared a report. (Doc. 22,

p. 19). When Officer Dunne learned about Plaintiff's report, he removed a property box from another inmate's cell and threw it at Plaintiff. *Id*. He also reported this incident. *Id*.

On July 13, 2017, Officer Dunne instructed Officer Samms and Officer Edwards to "[d]eadlock" Plaintiff in his cell and deprive him of food, water, exercise, and contact. (Doc. 22, p. 19). Plaintiff does not indicate whether they carried out these orders or describe how long he was subject to these deprivations. *Id*. He simply alleges that he was placed in solitary confinement for "several days," after his wife complained to internal affairs. (Doc. 22, pp. 19-20). Plaintiff allegedly continued to receive threats from Officer Dunne, but he offers no information about the dates, frequency, or nature of these threats. (Doc. 22, p. 20). Plaintiff "reached out" to IDOC Director Baldwin and Warden Campbell in an attempt to inform them about "what [wa]s happening." *Id*. They ignored his letters. *Id*.

Plaintiff complains that GTL and the IDOC are now working with Warden Dennison to confiscate old MP3 players, in an attempt to prevent inmates from recovering any money for their defective devices. (Doc. 22, p. 21). Inmates are encouraged to return defective devices to GTL for a refund and to purchase a "new" MP3 player. *Id*. However, inmates who return their defective devices are not actually given a refund and are encouraged to re-purchase used devices. *Id*. Plaintiff maintains that it has become the policy of GTL, IDOC and Warden Dennison to punish any inmate who "challenge[s] the pecuniary interests" of the IDOC and GTL. (Doc. 22, p. 22).

In his request for relief, Plaintiff seeks monetary damages against the defendants. (Doc. 22, p. 24). In addition, he seeks "injunctive relief to stop the unfair and deceptive business practices by IDOC and partner GTL." *Id*. He does not request any form of emergency relief in the First Amended Complaint. *Id*.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* First Amended Complaint into the following counts:

**Count 1 -** Fourteenth Amendment claim against GTL, IDOC Director Baldwin, Warden Garnett, Assistant Warden Harrington, and Ciara Hall for denying Plaintiff access to video visitation with his family by providing him with a used and/or defective MP3 player that was necessary to participate in the program.

**Count 2 -** First Amendment claim against GTL, IDOC Director Baldwin, Warden Garnett, Assistant Warden Harrington, and Ciara Hall for retaliating against Plaintiff because he pursued claims against the defendants in Illinois state court for damages he suffered as a result of Big Muddy's video visitation program.

**Count 3 -** Illinois state law claims for fraud against GTL, IDOC Director Baldwin, Warden Garnett, Assistant Warden Harrington, and Ciara Hall, including a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.*

**Count 4** – Fourteenth Amendment claim against Warden Garnett, Assistant Warden Harrington, and IDOC Director Baldwin for failing to take action on Plaintiff's grievances and complaints regarding Big Muddy's video visitation program.

**Count 5 -** First Amendment claim against Brinkley for retaliating against Plaintiff for reporting staff sexual misconduct by threatening him with "severe punishment" for filing all future reports of staff sexual misconduct against IDOC employees.

**Count 6 -** First Amendment retaliation claim against Hosch for terminating Plaintiff's employment in Big Muddy's law library, cancelling his enrollment in educational classes, denying him participation in rehabilitative programs and having him assaulted because he reported her for sexual misconduct.

**Count 7** – First Amendment claim against Warden Dennison for retaliating against Plaintiff for filing grievances by ordering an unknown officer at Shawnee to conduct a strip search of Plaintiff that resulted in his assault in the stomach with a wand and by threatening Plaintiff with future harm for filing additional grievances.

**Count 8 -** Eighth Amendment deliberate indifference claim against Officer Dunne for allegedly fondling Plaintiff's genitals during a routine strip search at Shawnee sometime between April and July 2017.

**Count 9 -** Eighth Amendment deliberate indifference claim against Officer Dunne, Officer Samms and Officer Edwards for subjecting Plaintiff to a "deadlock" on July 13, 2017, by placing him in his cell without food, water, exercise or contact for an unspecified period of time.

**Count 10 -** Fourteenth Amendment due process claim against IDOC Director Baldwin for ignoring Plaintiff's attempts to "reach out" and inform him about "what is happening" as Shawnee.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding the merits. **Any claim that is not included in the above-referenced list should be considered dismissed without prejudice from this action as improperly pled under the standards set forth in _Twombly_.**

### Claims Against Non-Parties

Plaintiff asserts a number of claims against individuals who are not named as defendants in this action. These non-parties include, but are not limited to, the following individuals: unidentified commissary employees at Big Muddy who sold Plaintiff an MP3 player on March 16, 2016 (Doc. 22, pp. 7-8); unidentified IDOC employee at Big Muddy who refused to cancel the transaction (Doc. 22, p. 9); "commissary" (Doc. 22, p. 10); "personal property" (Doc. 22, p. 10); Officer Pfeimeister (Doc. 22, pp. 13, 16); Officer Lasiter (Doc. 22, pp. 13, 16); unidentified officer who hit Plaintiff in the mid-section with a wand at Shawnee (Doc. 22, p. 17); unidentified mental health providers at Shawnee (Doc. 22, pp. 17, 19); unidentified corrections officers at Shawnee (Doc. 22, p. 18); internal affairs (Doc. 22, pp. 19-20); and Warden Campbell (Doc. 22, p. 20).

When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). Therefore, any claims asserted against these or any other non-parties are considered dismissed without prejudice from this action.

### Claims Previously Dismissed With Prejudice

Plaintiff also reasserts claims that were previously dismissed with prejudice. The Court previously dismissed with prejudice a Fourteenth Amendment due process claim against those defendants who mishandled Plaintiff's grievances (Count 3, original Complaint). (Doc. 8). Thus, Plaintiff is foreclosed from reasserting it in this, or any other, action.

Plaintiff recast this single claim as Counts 4 and 10 herein. The claims remain dismissed with prejudice. As the Court already explained, prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. Under the circumstances, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George*, 507 F.3d at 609; *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Counts 4 and 10 herein, like Count 3 in the original Complaint, shall remain dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Misjoinder of Claims and Parties

Before turning to the merits of any other claims in the First Amended Complaint, the Court must first consider whether the claims and defendants are properly joined in this action.

*See* FED. R. CIV. P. 18-21.  Claims against different groups of defendants that do not arise from a single transaction or occurrence (or series of related transactions or occurrences) and also do not share a common question of law or fact may not be joined in the same suit.  *See* FED. R. CIV. P. 20(a)(2).

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)).  A prisoner who files a "buckshot complaint" that includes multiple claims against different individuals should not be allowed to avoid "risking multiple strikes for what should have been several different lawsuits."  *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010) (citing *George*).

The Court has broad discretion when deciding whether to sever claims under the Federal Rules of Civil Procedure or to dismiss improperly joined defendants.  *See Owens*, 635 F.3d at 952; *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).  The Seventh Circuit has emphatically warned district courts against allowing inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint."  *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017).  *See also Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) (district court should have severed or dismissed unrelated and improperly joined claims).

With this in mind, the Court finds that several of the claims and parties are improperly joined in a single action, warranting severance or dismissal at this time.  Counts 1, 2, and 3 all involve claims against the same group of defendants (*i.e.*, GTL, IDOC Director Baldwin,

Warden Garnett, Assistant Warden Harrington, and Ciara Hall) arising from Plaintiff's challenge to Big Muddy's video visitation program. Counts 5 and 6 are unrelated First Amendment claims against Brinkley and Hosch for retaliating against Plaintiff because he reported Hosch's alleged sexual misconduct at Big Muddy. Count 7 involves a separate and unrelated First Amendment retaliation claim against Warden Dennison for ordering the strip search and assault of Plaintiff at Shawnee to discourage his grievance writing. Counts 8 and 9 involve claims against Officers Dunne, Samms and Edwards for subjecting Plaintiff to cruel and unusual punishment at Shawnee sometime after he filed his original Complaint in this case. Each of these group of claims arises from separate transactions or occurrences, involves different groups of defendants, and/or occurred at two different prisons. As such, they cannot proceed together in the same action.

Consistent with *George* and Federal Rule of Civil Procedure 21, the Court finds that Counts 1, 2, and 3 against GTL, IDOC Director Baldwin, Warden Garnett, Assistant Warden Harrington, and Ciara Hall belong together in the same action. These claims shall remain in this case. However, Counts 5 and 6 against Brinkley and Hosch shall be severed into a one new case, Count 7 against Warden Dennison shall likewise be severed into a second new case and Counts 8 and 9 against Officers Dunne, Samms and Edwards shall be severed into a third new case. Each newly-severed case shall receive a new case number, and Plaintiff will be assessed an additional filing fee for each case. The claims in each newly-severed case will be separately screened under 28 U.S.C. § 1915A.

## Merits Review Under 28 U.S.C. § 1915A

The Court will now consider the merits of Counts 1, 2, and 3, which are the only claims that remain in this case. Of these, only Count 2 survives preliminary review and shall proceed against Warden Garnett and Assistant Warden Harrington. This claim shall be dismissed without

prejudice against all other defendants for failure to state a claim upon which relief may be granted. In addition, Count 1 shall be dismissed with prejudice, and Count 3 shall be dismissed without prejudice for the reasons set forth below.

### Count 1

Count 1 does not survive screening under § 1915A. As this Court previously explained in the Order Dismissing Complaint (Doc. 8), no constitutional claim arises against the defendants for denying Plaintiff access to video visitation at Big Muddy. Courts generally analyze this claim under the Fourteenth Amendment Due Process Clause. Courts consistently hold that the loss of visitation privileges, even those including contact visits, is not an "atypical and significant hardship" that gives rise to a protected liberty interest or triggers the right to due process of law. *See, e.g., Woody v. Zatecky*, 594 F. App'x 311 (7th Cir. 2015) (citing *Lekas v. Briley*, 405 F.3d 602, 605, 607-08, 613 (7th Cir. 2005) (no liberty interest deprived by denial of contact visits plus loss of other privileges); *Dunn v. Castro*, 621 F.3d 1196, 1202-03 (9th Cir. 2010); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002); *Ramos v. Lamm*, 639 F.2d 559, 580, n. 26 (10th Cir. 1980)). In other words, no claim arises from the denial of access to video visitation. Accordingly, this claim shall be dismissed with prejudice against the defendants for failure to state a claim upon which relief may be granted.

### Count 2

The First Amendment retaliation claim in Count 2 survives preliminary review, but only against Warden Garnett and Assistant Warden Harrington. A prisoner who seeks to bring a First Amendment retaliation claim must show the following: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment

activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

In the First Amended Complaint, Plaintiff alleges that Warden Garnett and Assistant Warden Harrington sent Plaintiff to segregation for "several days" in retaliation for filing grievances and complaints that challenged Big Muddy's video visitation program. (Doc. 22, p. 15). The same defendants allegedly made the decision to send Plaintiff to Shawnee as part of a disciplinary transfer in retaliation for filing a suit against them in Illinois state court. (Doc. 22, p. 17). These allegations are sufficient to state a viable retaliation claim against Warden Garnett and Assistant Warden Harrington at screening.

However, Plaintiff's retaliation claim against GTL, Ciara Hall, and IDOC Director Baldwin is factually undeveloped. He named GTL and Ciara Hall in connection with the wardens' decision to punish him with segregation and to transfer him. But Plaintiff does not explain how either of these two defendants was responsible for these decisions. Further, he makes only vague assertions of retaliation against Hall without offering a single concrete example of steps Hall took to retaliate against Plaintiff. The allegations against IDOC Director Baldwin are even less substantial. Plaintiff cannot rely on bald or conclusory allegations of retaliation against GTL, Hall, or IDOC Director Baldwin. Therefore, Count 2 shall be dismissed without prejudice against all three of these defendants.

### Count 3

Finally, Plaintiff's state law claim for fraud or deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq*. shall be

dismissed without prejudice from this action. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). However, supplemental jurisdiction may be declined under 28 U.S.C. § 1367(c), if one of the five enumerated factors applies. One factor to consider is whether a state law claim would predominate over the claim or claims over which the district court has original jurisdiction, *i.e.*, the First Amendment retaliation claim. *See* 28 U.S.C. § 1367(c).

Here, it is unclear whether Plaintiff even intended to pursue a claim in federal court for fraud under Illinois state law and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq*. In the First Amended Complaint, Plaintiff indicates that he already filed a suit against the defendants in Jefferson County Circuit Court to challenge Big Muddy's video visitation program, and that action remains pending. Moreover, the state law claim(s) in Count 3 would certainly predominate over the First Amendment retaliation claim in Count 2, triggering application of § 1367(c). Given these considerations, the Court declines to exercise supplemental jurisdiction over Count 3 at this time and this claim shall be dismissed from this action without prejudice.

## Pending Motions

### Request for Preliminary Injunctive Relief (Doc. 20)

The Court deferred a decision on Plaintiff's request for preliminary injunctive relief in Document 20, after denying his request for a temporary restraining order without prejudice. (Doc. 21). At the time Plaintiff filed the motion, there was no operative First Amended Complaint on file with the Court. Additionally, Plaintiff addressed what appeared to be new claims against Warden Dennison at Shawnee.

In the motion, Plaintiff seeks to enjoin Warden Dennison from removing Plaintiff from the general prison population at Shawnee and restricting his access to the telephone, law library, recreation, and other basic necessities (*e.g.*, ice and toiletries). (Doc. 20, pp. 2-3). Plaintiff alleges that Warden Dennison removed him from the general population at some point and took away his privileges in retaliation for filing grievances and complaints using the Prison Rape Elimination Act hotline. (Doc. 20, p. 2).

Plaintiff did not indicate how long he was subject to these restrictions or when they were set to end. (Doc. 20). He has not supplemented his Motion for Preliminary Injunction with this information. *Id.* However, Plaintiff made it clear that he routinely speaks with his two children "daily," and he requested an Order authorizing his use of the telephone for "at least 4 hours a day." (Doc. 20, pp. 2-3). He also requested an unspecified amount of access to recreation, law library services, and ice, without explaining how long he had been subject to restrictions, the intended duration of these restrictions, or any impact the restrictions had on him. *Id.*

The Motion for Preliminary Injunction (Doc. 20) touches upon Plaintiff's claim in Count 7 against Warden Dennison. However, it has nothing to do with Counts 1, 2, or 3, which remain in this action. Under the circumstances, the motion is **DENIED** in this case.

The Clerk will be **DIRECTED to FILE** the Motion for Preliminary Injunction (Doc. 20) in the newly-severed case involving Count 7 against Warden Dennison. Plaintiff's request for a preliminary injunction in Document 20 shall be addressed in that case. If Plaintiff determines that the Motion for Preliminary Injunction should be addressed in another case, he should file the Motion in that case on his own and withdraw it from the newly-severed case involving Warden Dennison.

### Motion for Immediate Ruling on Motion for TRO/Preliminary Injunction (Doc. 31)

Plaintiff's Motion for Immediate Ruling is **DENIED** as **MOOT**. The Court previously ruled on Plaintiff's request for a temporary restraining order (*See* Docs. 20 and 21) one day after Plaintiff submitted his motion. In addition, the Court has now denied the Motion for Preliminary Injunction *in this case* because Plaintiff's motion and request for relief does not pertain to any of the claims that remain in this action.

### Disposition

**IT IS HEREBY ORDERED** that the First Amended Complaint (Doc. 22) supersedes and replaces all prior versions of the Complaint and renders them **VOID**.

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 20) is **DENIED** in this action. The Clerk is **DIRECTED** to **FILE** the motion in the severed case involving Defendant Jeff Dennison.

**IT IS ORDERED** that **COUNTS 4** and **10** are **DISMISSED** with prejudice from this action. Plaintiff previously brought the same claim (Count 3, original Complaint), and it was dismissed with prejudice in the Order Dismissing Case (Doc. 8). He is foreclosed from reasserting the claim.

**IT IS ALSO ORDERED** that the following claims, which are unrelated to all other claims in this case, are **SEVERED** into new cases:

**First Severed Case: COUNTS 5** and **6** against Defendants **BRINKLEY** and **HOSCH**, which shall be captioned: **SHANE A. KITTERMAN, Plaintiff v. CHRISTOPHER BRINKLEY and JOHANNE HOSCH, Defendants.**

**Second Severed Case: COUNT 7** against Defendant **DENNISON**, which shall be captioned: **SHANE A. KITTERMAN, Plaintiff v. JEFF DENNISON, Defendant.**

**Third Severed Case: COUNTS 8** and **9** against Defendants **DUNNE, SAMMS** and **EDWARDS**, which shall be captioned: **SHANE A. KITTERMAN, Plaintiff v. OFFICER DUNNE, OFFICER SAMMS and OFFICER EDWARDS, Defendants.**

In each new case, the Clerk is **DIRECTED** to file the following documents:

    (1)      This Memorandum and Order;

    (2)      The First Amended Complaint (Doc. 22);

    (3)      Motion to Proceed *in forma pauperis* (Doc. 2).

In addition, the Clerk is **DIRECTED** to **FILE** Plaintiff's Motion for Preliminary Injunction (Doc. 20) in the Second Severed Case against Defendant Jeff Dennison. Plaintiff's request for a temporary restraining order was already denied without prejudice, and Plaintiff has not renewed his request for this relief.

Because Plaintiff was granted leave to proceed *in forma pauperis* in this case, he shall be granted leave to proceed as a poor person in each newly-severed case as well. Plaintiff **will be responsible for an additional $350.00 filing fee** in each new case. The claims in the newly severed cases, including Counts 5, 6, 7, 8, and 9, will be screened pursuant to 28 U.S.C. § 1915A

after the new case numbers are assigned and judge assignments are made. No service shall be ordered on the defendant(s) in the newly-severed cases until the § 1915A review is complete.

**IT IS FURTHER ORDERED** that the ***only claims remaining in this action are COUNTS 1, 2, and 3 against Defendants GLOBAL TEL-LINK CORP, JOHN BALDWIN, JASON GARNETT, YOLLANDA HARRINGTON, and CIARA HALL.*** This case shall now be captioned: **SHANE A. KITTERMAN, Plaintiff v. GLOBAL TEL-LINK CORP, JOHN BALDWIN, JASON GARNETT, YOLLANDA HARRINGTON, and CIARA HALL, Defendants.**

**IT IS ORDERED** that **COUNT 1** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted, and **COUNT 3** is **DISMISSED** without prejudice because the Court declines to exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(c).

**IT IS ORDERED** that **COUNT 2** survives screening and shall proceed for further review against Defendants **JASON GARNETT** and **YOLLANDA HARRINGTON**.

**IT IS ORDERED** that Defendants **GLOBAL TEL-LINK CORP, JOHN BALDWIN** and **CIARA HALL** are **DISMISSED** without prejudice from this action.

**IT IS ORDERED** that Defendants **CHRISTOPHER BRINKLEY, JOHANNE HOSCH, JEFF DENNISON, OFFICER DUNNE, OFFICER SAMMS** and **OFFICER EDWARDS** are **DISMISSED** with prejudice from *this* action. The Clerk is directed to **TERMINATE** these defendants as parties to this action.

With respect to **COUNT 2**, the Clerk of Court shall prepare for Defendants **JASON GARNETT** and **YOLLANDA HARRINGTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is

**DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 22), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant and the Court will require the Defendant to pay the full costs of formal service to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge **Daly** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for

leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 19, 2018**

**s/ Staci M. Yandle**
**District Judge**
**United States District Court**
