UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANE A. KITTERMAN, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | )   Case No. 3:18-cv-00114-GCS |
| MICHAEL DUNNING, OFFICER SAMMS, OFFICER EDWARDS, JERID PICKFORD, JEFFREY DENNISON, JOHN BALDWIN and WARDEN WALKER, | ) ) ) ) ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

At the time of his complaint, Plaintiff Shane Kitterman was incarcerated in the custody of the Illinois Department of Corrections ("IDOC") at Shawnee Correctional Center ("Shawnee"). (Doc. 2). Plaintiff brings his complaint against Defendants pursuant to 42 U.S.C. § 1983. In his amended complaint, Plaintiff outlines seven counts against Defendants for violation of his constitutional rights. (Doc. 131). In Counts 1 and 2, Plaintiff alleges that Dunning, Samms, and Edwards were deliberately indifferent to a substantial risk of harm to Plaintiff in violation of the Eighth Amendment. *Id*. In Count 4, Plaintiff claims that Defendants Dennison and Baldwin violated the Eighth Amendment by failing to protect him. *Id*. Plaintiff also alleges two state law claims for assault against Defendant Dunning in Counts 6 and 7, a First Amendment retaliation claim against Defendants Dunning, Edwards, and Samms in Count 3, and a civil conspiracy claim

against Defendants Dunning, Edwards, Samms, Pickford, Banks, and Walker in Count 5. *Id*.

On September 14, 2020, Defendants moved for summary judgment on all counts arguing that Plaintiff failed to exhaust his administrative remedies. (Doc. 145). During a hearing on the motion, the Court ordered Defendants to supplement the evidentiary record and file a status report within thirty days of the hearing. (Doc. 169). Defendants complied on March 4, 2021. (Doc. 173). For the reasons outlined below, Defendants' motion for summary judgment is **DENIED.**

### FACTUAL BACKGROUND

On June 21, 2017, mental health professional Lauren Oestmann submitted an incident report noting that during a mental health evaluation Plaintiff had reported that Defendant Dunning grabbed his genitals during a strip search on April 26, 2017. (Doc. 173, Exh. E, p. 2). In her report, Ms. Oestmann noted that Plaintiff had not reported the incident earlier because he feared retaliation from the officer who groped him. (Doc. 173, Exh. F, p. 19). Ms. Oestmann also reported that she informed Plaintiff that she would "pass the information given to the [Prison Rape Elimination Act ("PREA")] compliance manager." *Id*.

In order to pass along the information Plaintiff provided her, Ms. Oestmann contacted Swiv Hammersley, who, in turn, informed PREA Compliance Manager Walker and Internal Affairs Officer Brian Banks about the situation. (Doc. 173, Exh. E, p. 2). As part of the Internal Affairs investigation, Defendant Pickford then interviewed Ms. Oestmann, Plaintiff, and Defendant Dunning. *Id*. On July 14, 2017, Defendant Pickford


found that Plaintiff's allegations were unfounded, which was noted in a memorandum forwarded to Defendant Dennison. *Id*.

On January 3, 2018, Plaintiff filed an emergency grievance alleging that Officer Anderson groped his genitals while the officer escorted Plaintiff to the Jefferson County Courthouse for a hearing. (Doc. 146, Exh. C, p. 19). The warden expedited this grievance as an emergency; however, the grievance officer denied the grievance after interviewing Plaintiff, as Plaintiff stated that he believed the incident was a misunderstanding. *Id*. at p. 18. Plaintiff did not appeal this decision to the ARB. (Doc. 146, p. 3).[1] Plaintiff initiated litigation in the present case shortly thereafter, on January 19, 2018. (Doc. 1, 2).

During the hearing on this matter, Plaintiff explained that he did not grieve the sexual assault underlying this case because the standard PREA procedure at Shawnee requires inmates to first report to a Health Care Unit ("HCU") administrator; that administrator would then report to Internal Affairs. *See also* (Doc. 159, p. 4). Plaintiff stated that this procedure prevented the officers who allegedly committed the assaults from having advanced notice of the investigation against them. Furthermore, Plaintiff claimed that he was told there was no need to file a grievance because the Internal Affairs investigation fulfilled the Prison Litigation Reform Act ("PLRA")'s statutory requirement that prisons be permitted to investigate and attempt to resolve inmate complaints internally prior to litigation. Plaintiff testified that Defendant Pickford told him not to

---

[1] Plaintiff also filed two grievances after initiating the present litigation. (Doc. 146, p. 3-4). However, Plaintiff does not argue that either of these grievances are exhausted for the purposes of this litigation. *See generally* (Doc. 159). Accordingly, the Court limits its analysis to the January 3, 2018 grievance against Officer Anderson and Plaintiff's claims regarding the Internal Affairs investigation.

write a grievance during his interview, and that instead, he was to only write that he "needed to speak to Internal Affairs." (Doc. 159, p. 5). He also testified that Ms. Oestmann told him not to write a grievance when he first reported to her. Plaintiff further noted that when he discussed the ongoing investigation on the Informant Line, Internal Affairs investigators repeated that Plaintiff need not file grievances about either the sexual assault or the retaliation resulting from the investigation, as doing so would reveal information to the officers against whom Plaintiff complained. Plaintiff explained that he filed a grievance regarding the alleged sexual assault by Officer Anderson because he first discussed the incident with the HCU, and administrators told him that he did not need to go to Internal Affairs in that instance.

The Court ordered Defendants to supplement the record by providing a copy of the Internal Affairs report, Plaintiff's medical records, and the Informant Line Call Record from April 1, 2017 through January 31, 2018. (Doc. 169). Defendants provided the internal affairs report and Plaintiff's medical records. (Doc. 173, Exh. E, Exh. F). Defendants also provided a declaration from Defendant Pickford, who stated that he did not instruct Plaintiff not to file grievances, and that there is no rule prohibiting inmates from filing grievances relating to sexual assaults. (Doc. 173, Exh. G). Defendants also provided Plaintiff with their Third Supplemental Initial Disclosures, including Plaintiff's medical records and a copy of the Informant Line Call Record for the relevant dates. (Doc. 173).

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC.

56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence for which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine whether factual issues relating to the defense of the failure to exhaust administrative remedies exist. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court will outline one of three potential outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The PLRA governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must

exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file a suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. These grievances must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN. CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response to the grievance, then that prisoner can submit a formal grievance to the prison's grievance officer. *Id*. at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). If the prisoner is still not satisfied with the CAO's decision, the prisoner can

formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its recommendation to the Director, who is then responsible for issuing the IDOC's final decision. *See* 20 ILL. ADMIN. CODE § 504.850(f).

The grievance process also allows for an inmate to file an emergency grievance directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO may determine if there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that the prisoner may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 ILL. ADMIN. CODE § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner

completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

## ANALYSIS

There are three circumstances in which an administrative remedy is not capable of use to obtain relief, and is therefore unavailable: (i) when the remedy operates as "a simple dead end," in which officers are unable or unwilling to provide relief; (ii) when, though mechanisms exist through which inmates can technically obtain relief, the mechanisms are so opaque no ordinary inmate can navigate them; or (iii) when prison administrators thwart an inmate's attempt to take advantage of available remedies through "machination, misrepresentation or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016); *see also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Pavey*, 544 F.3d at 742; *Dole* 438 F.3d at 808. When a plaintiff properly followed the procedure for exhausting administrative remedies, but prison officials mishandled the grievance, the remedy is rendered unavailable. *See Dole*, 438 F.3d at 811. For example, if the ARB rejected an appeal on the basis of a grievance officer's misidentification of the inmate's prison number, a plaintiff could argue that this mistake rendered his attempts to exhaust his administrative remedies thwarted. *See Ross v. Bock*, No. 16-C-8672, 2017 WL 6758394, at *3 (N.D. Ill. Nov. 29, 2017).

The "mere existence of an internal affairs investigation does not absolve an inmate" of their obligation to exhaust their administrative remedies. *Hallstrom v. Hammonds*, No. 16-cv-107-MJR-SCW, 2018 WL 1275931, at *4 n.2 (S.D. Ill. Jan. 3, 2018) (internal citations omitted). Nevertheless, administrative remedies are unavailable and

therefore exhausted when prison officials inaccurately describe the steps needed to pursue the remedy. For example, if an official erroneously informs an inmate that cooperating in an Internal Affairs investigation is sufficient to initiate the grievance process, that misrepresentation could effectively thwart an inmate's attempt to take advantage of available remedies. *See Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) (hereinafter "*Pavey II*").

However, the attempts to exhaust are only thwarted if the officials lead the plaintiff to an erroneous belief; if officials say nothing about the grievance process, they have not thwarted the plaintiff's attempt to exhaust. For instance, in *Pavey II*, the Seventh Circuit noted that the plaintiff's attempts to exhaust would be thwarted if officers informed the plaintiff that beginning an investigation with Internal Affairs would initiate the grievance process. *Id*. However, in that case, the plaintiff's testimony contradicted his claims; specifically, the plaintiff stated that the officers he spoke to did not mention the grievance process during their conversations. *Id*. He also testified that he had filed at least ten grievances in the past and thus was familiar with the grievance process. *Id*. Accordingly, the Court held that the plaintiff was not thwarted from exhausting his administrative remedies. *Id*.

Plaintiff asserts that both Ms. Oestmann, in her capacity as a mental health professional with the HCU, and Internal Affairs officers, including Defendant Pickford, thwarted his attempts to exhaust his remedies when they told him that he should not file grievances regarding sexual assaults. As for Defendant Pickford, he states in his declaration that he did not instruct Plaintiff not to file grievances and that there is no rule

against filing grievances about sexual assaults. (Doc. 173, Exh. G). While the Court credits Defendant Pickford's declaration and finds that he did not tell Plaintiff not to file a grievance, the Court cannot say that no Internal Affairs officer told Plaintiff not to file a grievance. For example, both Plaintiff and Defendants agree that the Informant Line Call Report recorded information pertinent to Plaintiff's complaint, and Defendants sent Plaintiff a copy of the Report dated April 1, 2017 through January 31, 2018. (Doc. 173). However, Defendants did not provide the Informant Line Call Report in their supplement to the evidentiary record, which could have shed more light on the matter. Moreover, the fact that Plaintiff continued to rely on the Informant Line regarding this matter for several months reinforces Plaintiff's assertions that there was no need to file a formal grievance because Internal Affairs was handling it.

Even though Defendant Pickford did not instruct Plaintiff not to file a grievance, there is no similar evidence for Ms. Oestmann. On a motion for summary judgment on the issue of exhaustion of administrative remedies, Defendants bear the burden of proving non-exhaustion. *See Jones v. Bock,* 549 U.S. 199, 216 (2007); *Maddox v. Love,* 655 F.3d 709, 720 (7th Cir. 2011). In order to satisfy that burden, Defendants must do more than point to a lack of evidence in the record. Instead, Defendants must affirmatively establish that the evidence conclusively shows that no reasonable fact-finder could find that Plaintiff was prevented from exhausting his administrative remedies. *See Branham v. Snow,* 392 F.3d 896, 906–907 (7th Cir. 2004). Unlike Defendant Pickford, there is no declaration from Ms. Oestmann indicating that she did not tell Plaintiff not to file grievances. Instead, in her report, Ms. Oestmann notes that she did tell Plaintiff she would

inform Internal Affairs about his claim. (Doc. 173, p. 19). Construed in the light most favorable to the Plaintiff as the non-moving party, the Court finds that this evidence may support Plaintiff's allegations that Ms. Oestmann told him not to file grievances during an Internal Affairs investigation. *See Maclin*, 520 F.3d at 786. At the very least, it corroborates Plaintiff's assertions about the need to report sexual assaults first to the HCU, who would, in turn, report the matter to Internal Affairs. Given the corroboration of Plaintiff's assertions and the lack of an unequivocal statement from Ms. Oestmann indicating that she did not advise Plaintiff to forego filing a formal grievance, the Court finds that the Defendants have failed to meet their burden of proof on this point.

During the hearing, Defendants also questioned why Plaintiff used the grievance procedure when complaining about Officer Anderson's alleged assault, but did not do so for the alleged assault involving Defendant Dunning. According to Defendants, Plaintiff's past use of the grievance procedure contradicted his testimony that officers told him he should not use the grievance procedure when complaining of sexual assaults. Defendants' argument is similar to the Seventh Circuit's reasoning in *Pavey II*, as the Court noted that the plaintiff had testified as to his familiarity with the grievance process, and thus should have known that an Internal Affairs investigation did not initiate the grievance process. 663 F.3d at 906. However, in that case, the plaintiff filed grievances prior to, rather than after, the grievance at issue. Because the defendants did not discuss grievances when conducting their investigation, the plaintiff had no reason to believe that his prior grievances were not indicative of how he should file grievances in that case. In contrast, here, Plaintiff filed the grievance regarding Officer Anderson after the Internal

Affairs investigation into the alleged assault at issue; this grievance therefore does not demonstrate Plaintiff's knowledge of the grievance procedure at the time of the relevant investigation.

Furthermore, Plaintiff's complaint about Officer Anderson's conduct is consistent with Plaintiff's overall assertions that he was required to report such matters initially to the HCU Administrator. Plaintiff testified that he filed a grievance against Officer Anderson, but only did so after he first reported the matter to the HCU Administrator. Plaintiff then filed a grievance against Officer Anderson after the HCU Administrator told Plaintiff that the matter did not need to be reported to Internal Affairs. This is consistent with Plaintiff's allegations about the purported grievance procedure regarding sexual assaults at Shawnee where the HCU administrator makes the determination of whether the matter should be referred to Internal Affairs. In the case of Defendant Dunning, the HCU Administrator thought it was appropriate to go to Internal Affairs, which explains why Plaintiff did not pursue the regular grievance process with respect to those allegations. However, with respect to Officer Anderson, Plaintiff pursued the regular grievance process because the HCU Administrator told him the matter did not need to be reported to Internal Affairs. Thus, Plaintiff's handling of his complaints against Officer Anderson is consistent with Plaintiff's explanation for how the grievance process with respect to sexual assaults at Shawnee apparently worked. And, without any evidence to the contrary from the HCU administrator or any other HCU personnel, the Court chooses to credit Plaintiff's testimony, which the Court finds to be internally consistent. Accordingly, the Court concludes that Plaintiff was thwarted from exhausting

his administrative remedies due to representations made to Plaintiff by the HCU regarding how to handle complaints of sexual assaults. Plaintiff's remedies are therefore exhausted.

## CONCLUSION

For the above stated reasons, Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 145) is **DENIED**.

**IT IS SO ORDERED.**

**Dated: May 6, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.05.06 15:06:40 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**